IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL J. WELLS,

               Plaintiff,              Civil Action No.
                                   9:17-CV-0468 (LEK/DEP)

      v.

MATTHEW HANLON, *et al.*,

               Defendants.

_____

APPEARANCES:                 OF COUNSEL:

FOR PLAINTIFF:

MICHAEL J. WELLS, *Pro se*
11-A-2829
Attica Correctional Facility
Box 149
Attica, NY 14011

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN      KATIE E. VALDER, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is a civil rights action brought by *pro se* plaintiff Michael J. Wells, a New York State prison inmate, pursuant to 42 U.S.C. § 1983. In his complaint plaintiff alleges that, while he was confined in a secure unit of a local hospital, he was assaulted by the defendants, employees of the New York State Department of Corrections and Community Supervision ("DOCCS") and/or the hospital, and additionally that he was administered medical treatment without his consent.

In response to plaintiff's complaint, defendants have moved for dismissal of his federal claims based upon his alleged failure to exhaust available administrative remedies before commencing suit, and ask that the court decline to exercise supplemental jurisdiction over plaintiff's state law claims or, alternatively, to find that they are barred by New York Correction Law § 24. Defendants further argue that plaintiff's claims against one of the defendants should be dismissed based upon the lack of his personal involvement in the conduct giving rise to plaintiff's claims. For the reasons set forth below, I recommend that defendants' motion be granted, in part, but otherwise denied.

I.    BACKGROUND[1]

Plaintiff is a prison inmate currently entrusted to the custody of the DOCCS. *See generally* Dkt. No. 1. At the times relevant to the claims set forth in his complaint, plaintiff was confined in a secure unit within the State University of New York Upstate Medical Center ("SUNY Upstate"), a hospital located in Syracuse, New York, and was subject to monitoring by several individuals, including (1) defendants John Locastro and James Edwards, DOCCS corrections sergeants; (2) defendants Anthony Turo and Rex Vosberg, corrections officers; and (3) defendants John and Jane Doe, unidentified SUNY Upstate security guards. *Id.* at 2-3.

On April 13, 2017, plaintiff informed defendant Edwards that he wished to refuse surgery and return to his prison facility. Dkt. No. 1 at 3. Defendant Edwards left the room, but upon returning informed plaintiff that he was not permitted to refuse medical treatment or surgery. *Id.* Plaintiff was then instructed to lie down on his bed so that a nurse could give him a shot of Haldol. *Id.* When plaintiff attempted to evade the administration of the medication, defendants physically restrained him and the shot was

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

given over his objection. *Id.* During the use-of-force incident, defendant

Vosberg applied a choke hold on plaintiff and defendant John Doe

punched plaintiff repeatedly in the groin area. *Id.*

A second shot of Haldol was administered by a nurse while others in

the room attempted to place plaintiff in physical restraints. Dkt. No. 1 at 4.

As those efforts were underway, defendant Vosberg attempted "to dig into

plaintiff's eye," and defendant Turo grabbed plaintiff's groin area and

applied pressure. *Id.* After defendant Vosberg instructed plaintiff to "shut

his mouth," Vosberg covered plaintiff's face with a pillow causing him to

pass out. *Id.* When plaintiff awoke he was told that defendant Matthew

Hanlon, a SUNY Upstate surgeon, had performed surgery on his stomach.

*Id.*

Plaintiff does not remember signing a form indicating his consent to

the surgery. Dkt. No. 1 at 4. As a result of the surgery, plaintiff now has

difficulty urinating and defecating, and suffers from constant abdominal

pain at the point of his incision. *Id.*

II.   PROCEDURAL HISTORY

Plaintiff's complaint in this action, which is dated April 29, 2017, was

filed with the court on May 1, 2017. Dkt. No. 1. Filed together with that

complaint was a motion for leave to proceed *in forma pauperis* ("IFP"),

accompanied by an inmate authorization form.[2] Dkt. Nos. 2, 3. The individual defendants were sued both in their individual and official capacities. Dkt. No. 1 at 1. Plaintiff's complaint is less than precise in articulating the claims being asserted, but requests $10 million as compensatory and punitive damages. *Id.* at 4.

On June 12, 2017, Senior District Judge Lawrence E. Kahn issued a decision and order, following his review of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 5. In his decision, Judge Kahn granted plaintiff's IFP application and dismissed plaintiff's claims against SUNY Upstate and his official capacity damage claims against the individual defendants, but otherwise accepted plaintiff's complaint for filing and ordered that the clerk issue summonses for the remaining named defendants.[3] *Id.* Judge Kahn identified the following causes of action as being asserted in plaintiff's complaint: (1) a Fourteenth Amendment claim against defendants Edwards, Turo, Vosberg, Locastro, Hanlon, John Doe, and Jane Doe; (2) an Eighth Amendment excessive force claim asserted against defendants Turro, Vosberg, and John Doe; and (3) New York

---

[2]    Plaintiff also submitted a motion for the appointment of *pro bono* counsel with his complaint. Dkt. No. 4. That motion was renewed on June 26, 2017. Dkt. No. 7. Both motions were denied by the court. Dkt. Nos. 5, 9.

[3]    In its decision the court noted that, until they are identified, the John Doe and Jane Doe defendants cannot be served. Dkt. No. 5 at 8.

State common law assault and battery claims asserted against defendants Edwards, Turo, Vosberg, Locastro, Hanlon, John Doe, and Jane Doe. *Id.* at 10.

In lieu of answering plaintiff's complaint, defendants have filed a motion to dismiss on the grounds that plaintiff's claims are barred by virtue of his failure to exhaust the available administrative remedies before commencing suit, and that any state law claims deemed to have been asserted in his complaint should be dismissed either based upon the court's decision to decline to exercise supplemental jurisdiction or, alternatively, as barred under New York Correction Law § 24. Dkt. No. 25-1. Plaintiff has submitted a memorandum, with attachments, in opposition to defendants' motion, and defendants have since replied. Dkt. Nos. 29, 30. Defendants' motion, which is now fully briefed, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292,

300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed*

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a

plaintiff proceeds *pro se*, a court is obliged to construe his pleadings

liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r*

*of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y.

2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.    Exhaustion

In his complaint, plaintiff states the following:

> Plaintiff has not filed a grievance as the incident
> occurred in SUNY Upstate Medical Center and to
> the plaintiffs [sic] best of [sic] knowledge the
> hospital has no grievance process.

Dkt. No. 1 at 3. Based upon this allegation, defendants contend that

plaintiff's federal causes of action are subject to dismissal for failure to

satisfy the applicable exhaustion requirement. Dkt. No. 25-1 at 6-11.

1.    Legal Standard

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-

134, 110 Stat. 1321 (1996), which imposes several restrictions on the

ability of prisoners to maintain federal civil rights actions, expressly

provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. §

1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[4]

In New York, a grievance procedure, designated as the Inmate Grievance Program ("IGP"), is available to state prison inmates who seek

---

[4]    While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

to complain of prison conditions. *Williams*, 829 F.3d at 119. The IGP is generally comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1 701.5; *Williams*, 829 F.3d at 119.

The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[5] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's

---

[5]     The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

appeal.[6] *Id.* at § 701.5(c)(3)(i)(ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. *Id.* at § 701.5(d)(2)(i)(ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC or superintendent does not timely respond, an inmate is permitted to appeal "to the next step." *Id.* at § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to

---

[6]     Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that are "available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (internal quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to

prisoners under the PLRA.[7] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

"Failure to exhaust available administrative remedies represents is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007); *accord, Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013). For this reason, dismissal is appropriate at the motion to dismiss stage only where it is apparent on the face of a

---

[7]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

complaint that the plaintiff did not exhaust. *Williams*, 829 F.3d at 122.

       2.   <u>Analysis</u>

In this case, plaintiff's complaint unmistakably states that he did not file a grievance concerning his allegations against the defendants because the incidents occurred at SUNY Upstate and "the hospital has no grievance process." Dkt. No. 1 at 3. This allegation, however, begs the question *Ross* poses, which is whether the IGP was "available" to plaintiff such that he was required under the PLRA to exhaust the available administrative remedies. Through their motion, defendants argue that the IGP was available to plaintiff because, notwithstanding the fact that the incidents forming the basis of plaintiff's complaint occurred in a non-DOCCS facility, plaintiff returned to a DOCCS facility, specifically Five Points Correctional Facility ("Five Points), within the twenty-one day time period that the IGP provides for filing a grievance. Dkt. No. 25-1 at 9-10. Plaintiff has responded in opposition to defendants' motion by contending that he, in fact, attempted to file a grievance at Five Points but was informed that, because the incident at issue did not occur at Five Points, "there was [nothing] that could be done by inmate Grievance Coordinator M. Schultz." Dkt. No. 29 at 3. Plaintiff further alleges that the grievance was therefore "never officially filed[.]" *Id.*

One of the IGP's provisions precludes inmate grievances concerning any policies or actions "of an outside agency. . . or . . . an entity not under the supervision of the [DOCCS] Commissioner." N.Y.C.R.R. § 701.3(f). Defendants do not address this provision in their motion. Defendant Hanlon is not a DOCCS employee, however, and it therefore seems reasonable to assume that he is not "under the supervision" of the DOCCS Commissioner. Because the IGP specifically excludes from its provisions those complaints aimed at non-DOCCS entities and persons, it cannot be said that the IGP was available to plaintiff with respect to his complaints against defendant Hanlon. On that basis alone, I would recommend denying defendants' motion to the extent it seeks dismissal of plaintiff's claims against defendant Hanlon based on plaintiff's failure to exhaust.

With respect to defendants Locastro, Edwards, Turo, and Vosberg, all of whom are DOCCS corrections sergeants or officers, 7 N.Y.C.R.R. § 701.5(a) does not provide as much clarity. That provision states that "[a]n inmate must submit a complaint to the clerk within 21 calendar days of an alleged occurrence" and that "[t]he complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." 7 N.Y.C.R.R. § 701.5(a). Because plaintiff was hospitalized at an outside, non-DOCCS medical center at the time of the alleged incident, it is not

apparent whether plaintiff could have filed a grievance while hospitalized in SUNY Upstate. While defendants argue that plaintiff remained in DOCCS custody at all relevant times, they do not address whether plaintiff could have filed a grievance while "housed" in a non-DOCCS facility, and how the IGP could operate under those circumstances. Nevertheless, section 701.5(a) does seem to suggest that, once plaintiff arrived back into a DOCCS facility – in this case Five Points – he could have filed a grievance utilizing the IGP, even though it concerned an incident that occurred at a non-DOCCS facility. Indeed, this is the argument set forth by defendants in support of their motion to dismiss. Dkt. No. 25-1 at 9-10.

Complicating matters, however, is that, in response to defendants' motion, plaintiff alleges that he did, in fact, attempt to file a grievance at Five Points upon his release from the hospital. Dkt. No. 29 at 3. He further alleges that he was told that the grievance could not be processed because the incidents had nothing "to do with Five Points." *Id.* Plaintiff attached a copy of the grievance to his response. *Id.* at 5-6. The grievance is dated April 29, 2017, the same date on which plaintiff signed his complaint in this matter.[8]  *Compare* Dkt. No. 1 at 4 *with* Dkt. No. 29 at 5. Defendants

---

[8]    Interestingly, but by no means determinative of any issue, the envelope in which plaintiff mailed his complaint to the court is postmarked April 27, 2017. Dkt. No. 1-3.

contend that, even assuming plaintiff filed the grievance as he purports, it is not possible that plaintiff could have completed the grievance process by the time he filed his complaint in federal district court. Dkt. No. 25-1 at 9; Dkt. No. 30. Defendants do not, however, address plaintiff's allegation that he was advised at Five Points that he could not file his grievance there when he attempted to do so upon being released from SUNY Upstate.[9] *See generally* Dkt. No. 30. Accordingly, although the court does not dispute defendants' contention that it is impossible for plaintiff to have completed the IGP process prior to filing this lawsuit, if the IGP was not available to plaintiff, his failure to appeal his grievance through to the CORC is irrelevant.

The above-described competing and conflicting facts demonstrate the difficulty in rendering a conclusive determination at this juncture with respect to whether the IGP was available to plaintiff at the relevant times. Although it is evident (based on plaintiff's own admissions and the fact that his purported grievance is dated the same as his complaint in this action) that plaintiff did not complete the grievance process before commencing

---

[9]    Although not squarely presented with these facts in this case, defendants also do not address how the IGP would operate had plaintiff remained in SUNY Upstate beyond the twenty-one day period provided to file a grievance. *See* 7 N.Y.C.R.R. § 701.5(a). Here, plaintiff was released from the hospital and entered Five Points within that twenty-one-day window. Dkt. No. 1 at 1. For that reason, defendants contend the IGP remained available to plaintiff. Dkt. No. 25-1 at 10.

this action, the parties dispute whether the IGP was actually available to plaintiff so he could properly exhaust. Because defendants' pending motion is styled as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the parties are asking the court to consider matters outside of plaintiff's complaint, the court would be required to convert the motion to one for summary judgment before rendering a final determination.[10] Fed. R. Civ. P. 12(d). Without proper notice to the parties, conversion is not permitted. *Id.*; *see also Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008).

The mixed questions of law and fact that are presented by the parties' submissions in connection with defendants' exhaustion defense are better addressed on motion for summary judgment following the completion of discovery. The record at this time is far from clear concerning, for example, the veracity of plaintiff's contention that he actually attempted to file a grievance and whether his attempt was rejected by someone in the IGP office at Five Points.[11] The court also has no basis upon which to conclude

---

[10] As is discussed more completely below in part III.C. of this report, the court cannot consider plaintiff's submissions in response to the pending motion regarding exhaustion without converting the motion because the allegations concerning exhaustion are not necessarily consistent with those found in his complaint.

[11] Relatedly, it is also not apparent whether plaintiff received a written response from someone in the Five Points IGP office rejecting his grievance. To the extent such written response was rendered, plaintiff did not provide a copy to the court in

whether the IGP would have allowed plaintiff to file his grievance while hospitalized at SUNY Upstate or whether he was required to await transfer back into a DOCCS facility, even though he technically remained in DOCCS custody at all relevant times. In light of the number of outstanding questions generated by the parties' submissions, I recommend defendants' motion to dismiss plaintiff's claims asserted against them be denied without prejudice to renewal on a motion for summary judgment following the completion of discovery. *Cf. Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54 (2d Cir. 2015) (reversing the district court's grant of summary judgment in favor of the defendants because the defendants failed to adduce sufficient evidence that addressed "whether any remedies were in fact available," where the plaintiff was allegedly assaulted in a courthouse (rather than the county jail), and the jail's handbook did not conclusively determine whether the plaintiff could have utilized the jail's administrative procedures to file a grievance).

---

conjunction with his response to the pending motion. Defendants also did not provide a copy (to the extent it exists).

C.    Personal Involvement of Defendant Hanlon

Defendants next contend that plaintiff's claim asserted against defendant Hanlon should be dismissed because plaintiff's complaint fails to allege sufficient facts plausibly suggesting that defendant Hanlon was personally involved in any of the asserted causes of action. Dkt. No. 25-1 at 11-13.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Ashcroft v. Iqbal*, 556 U.S. 622, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S.*

*Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).[12]

In this case, plaintiff's complaint alleges that defendant Hanlon performed surgery on plaintiff without plaintiff's consent. Dkt. No. 1 at 4. Specifically, plaintiff alleges that he told defendant Edwards that he "wished to refuse surgery" and does not recall signing a consent form prior to the surgery. *Id.* at 3-4. Plaintiff contends that his last memory before waking up after surgery was refusing medical attention and the assault by defendants Locastro, Turo, Vosberg, and Edwards. *Id.* at 4. In his response to defendants' pending motion, plaintiff further alleges that he directly informed defendant Hanlon "days" before the surgery that he did not want "to be cut open[.]" Dkt. No. 29 at 4. These allegations are sufficient to plausibly allege that defendant Hanlon performed an operation on plaintiff without plaintiff's consent and that defendant Hanlon was aware of plaintiff's lack of consent.

In their motion, defendants argue that the court should not consider plaintiff's contentions contained in his opposition to the pending motion unless the court converts the motion to one for summary judgment. Dkt.

---

[12]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

No. 30 at 2. The Second Circuit has concluded, however, that a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint to the extent those papers are consistent with the allegations in the complaint. *See, e.g., Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170 n.1 (2d Cir. 1998) ("[W]e deem [the plaintiff]'s complaint to include the facts contained in his memorandum of law filed in response to [the defendant]'s 1996 motion to dismiss."); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) ("In his affidavit submitted in opposition to defendants' motion to dismiss, [the plaintiff] asserts that [defendant] Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, [the plaintiff]'s allegations against [defendant] Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, . . . and therefore state a colorable claim under the Eighth and Fourteenth Amendments."); *see also Donhauser v. Goord*, 314 F. Supp. 2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint." (internal quotation marks omitted) (collecting district court cases)), *vacated on other grounds*, 317 F.

Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.). In his response to the pending motion, plaintiff elaborates on the complaint's allegation that he did not consent to surgery and refused medical attention by explaining that he told defendant Hanlon directly that he did not want "to be cut open." Dkt. No. 29 at 3. This new allegation does not contradict plaintiff's complaint and is consistent with those allegations concerning defendant Hanlon found in plaintiff's complaint.

Because plaintiff's complaint and response to defendants' motion plausibly allege that defendant Hanlon operated on plaintiff against plaintiff's wishes, I recommend that defendants' motion be denied with respect to defendant Hanlon.

D.    New York State Assault and Battery Claims

Plaintiff's complaint also asserts New York State assault and battery claims against the defendants. Dkt. No. 1 at 4; *see also* Dkt. No. 5 at 10. Defendants seek the dismissal of those claims as against defendants Edwards, Locastro, Turo, and Vosberg based on New York Correction Law § 24. Dkt. No. 13. Defendants also request the court decline to exercise supplemental jurisdiction over the state law claims to the extent they are asserted against defendant Hanlon. *Id.* at 14.

New York Correction Law § 24 precludes civil actions from being

filed against "any officer or employee of [the Department of Corrections and Community Supervision] . . . in his . . . personal capacity, for damages arising out of any act done or failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee[,]" except for civil actions brought by the New York State Attorney General. N.Y. Corr. L. § 24(1). Because defendants Edwards, Locastro, Turo, and Vosberg are employed by the DOCCS, New York Correction Law § 24 is triggered, precluding plaintiff from maintaining assault and battery claims against them. *See Dallio v. Hebert*, 678 F. Supp. 2d 35, 57 (N.D.N.Y. 2009) (Suddaby, J., *adopting report and recommendation by* Lowe, J.) (dismissing the plaintiff's state-law claims of assault, battery, and negligence against a defendant corrections officer because, "[a]lthough New York Correction Law section 24 explicitly bars only cases filed in state court, it is equally applicable to state law claims filed in federal court"). For these reasons, I recommend that the state law claims asserted against defendants Edwards, Locastro, Turo, and Vosberg in their individual capacities be dismissed with prejudice.[13]

 With respect to the assault and battery claims asserted against

---

[13] Plaintiff's state law claims asserted against defendants Edwards, Locastro, Turo, and Vosberg in their official capacities were dismissed by Judge Kahn on June 12, 2017. Dkt. No. 5 at 7.

defendant Hanlon, in the event plaintiff's federal constitutional claims

survive defendants' pending motion, this court retains supplemental

jurisdiction over those state law claims under 28 U.S.C. § 1367. That

statute provides, in relevant part, as follows:

> [I]n any civil action of which the district courts have
> original jurisdiction, the district courts shall have
> supplemental jurisdiction over all other claims that
> are so related to claims in the action within such
> original jurisdiction that they form part of the same
> case or controversy under Article III of the United
> States Constitution.

28 U.S.C. § 1367(a). Because I am recommending that plaintiff's

constitutional claims against all of the defendants remain in the action,

supplemental jurisdiction over plaintiff's state law claims asserted against

defendant Hanlon is appropriate. Accordingly, I do not recommend

dismissal of those claims at this juncture.

IV.    SUMMARY AND RECOMMENDATION

Although it is clear that, prior to commencing suit in this action,

plaintiff did not exhaust available administrative remedies with regard to

his civil rights claims, the parties' submissions in connection with

defendants' motion to dismiss give rise to a dispute as to whether the IGP

was available to plaintiff at the relevant times. This question is better

resolved on the basis of a more robust record, following the completion of

discovery, either on a motion for summary judgment or at trial. Turning to defendant Hanlon's personal involvement, plaintiff's complaint and his response in opposition to defendants' motion plausibly allege that defendant Hanlon provided medical treatment to plaintiff without his consent. Lastly, although plaintiff's state law assault and battery claims asserted against defendants Edwards, Locastro, Turo, and Vosberg are precluded pursuant to New York Correction Law § 24, the court retains supplemental jurisdiction over those same claims asserted against defendant Hanlon.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 25) be GRANTED, in part, only to the extent defendants seek dismissal of plaintiff's New York State assault and battery causes of action asserted against defendants Edwards, Locastro, Turo, and Vosberg, but otherwise DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this

report.[14]  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P.   6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:    May 7, 2018
          Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

---

[14]    If you are proceeding *pro se* and are served with this report and
recommendation by mail, three additional days will be added to the fourteen-day
period, meaning that you have seventeen days from the date the report and
recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If
the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then
the deadline is extended until the end of the next day that is not a Saturday, Sunday, or
legal holiday. Fed. R. Civ. P. 6(a)(1)(C).



Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

(Cite as: 1994 WL 23069 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dale HENDRICKSON, Plaintiff,
v.
UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet Keith,
Otisville Medical Department, Defendants.
No. 91 CIV. 8135.

Jan. 24, 1994.
MEMORANDUM AND ORDER

McKENNA, District Judge.

**\*1** On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an inmate
then in confinement at the Federal Correctional Institution
in Otisville, New York ("Otisville"), filed this action for
injunctive relief and damages based upon alleged
violations of his rights under the United States
Constitution, Amendments I, IV, V, VI, IX, and XIII, and
upon violations of various laws and/or regulations
governing prison administration.[FN1] The Complaint names
as defendants G.L. Hershberger ("Hershberger"), the
United States Attorney General ("Attorney General"),
Gary Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith ("Keith"), the
Bureau of Prisons ("BOP"), and the Otisville Medical
Department ("OTV Medical Department") (collectively
"Defendants"). Defendants moved for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of
Civil Procedure, or, in the alternative, for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set out below, Defendants'
Rule 12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Complaint,
pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure, for failure to state a claim upon which relief

can be granted. Rule 12(c) provides:

After the pleadings are closed but within such time as
not to delay the trial, any party may move for judgment
on the pleadings. If, on a motion for judgment on the
pleadings, matters outside the pleadings are presented to
and not excluded by the court, the motion shall be
treated as one for summary judgment and disposed of as
provided in Rule 56, and all parties shall be given
reasonable opportunity to present all material made
pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that are
employed for dismissing a complaint for failure to state a
claim under Fed.R.Civ.P. 12(b)(6) are applicable" to a
Rule 12(c) motion to dismiss for failure to state a claim
upon which relief can be granted. See Ad–Hoc Comm. of
the Baruch Black & Hispanic Alumni Ass'n v. Bernard M.
Baruch College, 835 F.2d 980, 982 (2d Cir.1987); see
also Viacom Int'l. Inc. v. Time, Inc., 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Arthur R.
Miller, Federal Practice and Procedure ¶ 1367, at 515–16
(1990). Thus, the Court must read the Complaint
generously, drawing all reasonable inferences from the
complainant's allegations. See California Motor Transp.
v. Trucking Unlimited, 404 U.S. 508, 515 (1972).
Moreover, "consideration is limited to the factual
allegations in [the] amended complaint, which are
accepted as true, to documents attached to the
complaint as an exhibit or incorporated in it by reference, to matters
of which judicial notice may be taken, or to documents
either in plaintiff['s] possession or of which plaintiff[ ] had
knowledge and relied on in bringing suit." Brass v.
American Film Technologies, Inc., 987 F.2d 142 (2d
Cir.1993); accord Allen v. Westpoint–Pepperell, Inc., 945
F.2d 40, 44 (2d Cir.1991); Cortec Indus., Inc. v. Sum
Holding L.P., 949 F.2d 42, 47–48 (2d Cir.1991), cert.
denied, 112 S.Ct. 1561 (1992); Frazier v. General Elec.
Co., 930 F.2d 1004, 1007 (2d Cir.1991). Defendants,
therefore, are entitled to dismissal for failure to state a
claim only if the Court finds beyond a doubt that "plaintiff
can prove no set of facts" to support the claim that
plaintiff is entitled to relief. See Conley v. Gibson, 355
U.S. 41, 45–46 (1957).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

(Cite as: 1994 WL 23069 (S.D.N.Y.))

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

## II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H [earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

## III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [FN2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

(Cite as: 1994 WL 23069 (S.D.N.Y.))

mentioned by name any of the individual named Defendants. Defs' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987),* cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity as to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have

participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

> FN1. The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna on 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

> FN2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

S.D.N.Y.,1994.

Hendrickson v. U.S. Atty. Gen.
Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.