UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL J. WELLS,

                                        Plaintiff,

        v.                                                              9:17-CV-0468
                                                                        (LEK/ML)

MATTHEW HANLON, *et. al.*,

                                        Defendants.

---

APPEARANCES:

MICHAEL J. WELLS
11-A-2829
Plaintiff, *pro se*
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

HON. LETITIA JAMES                      DAVID A. ROSENBERG, ESQ.
Attorney General for the                Assistant Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**MIROSLAV LOVRIC**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff *pro se* Michael J. Wells ("Wells" or "Plaintiff"), an inmate who was, at all relevant

times, in the custody of the New York Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants

---

        [1]        This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Matthew Hanlon ("Hanlon"), John Locastro ("Locastro"), James Edwards ("Edwards"), Anthony Turo ("Turo"), Rex Vosberg ("Vosberg"), Jane Doe, University Security Guard Sergeant (SUNY Upstate Medical Center), and John Doe, University Security Guard Sergeant, (SUNY Upstate Medical Center) for violations of his rights under the Eighth and Fourteenth Amendments.  Dkt. No. 1 ("Compl.").  Wells also asserts New York State common law assault and battery claims against Hanlon.  *Id*.  Presently before the Court is Defendants' motion for summary judgment.  Dkt. No. 54.  Wells opposed the motion and Defendants submitted a reply.  Dkt. Nos. 57 and 58.  For the following reasons, it is recommended that Defendants' motion for summary judgment be granted in part and denied in part.  In addition, as discussed below, the Court recommends that Wells' claims against Jane Doe and John Doe be dismissed, *sua sponte*.

## I.  BACKGROUND

### A.  Facts[2]

---

[2]    Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Local Rule 7.1(a)(3).

Defendants filed a Statement of Material Facts.  Wells responded and admits the facts contained in certain paragraphs of Defendants' Statement of Material Facts.  Additionally, Wells annexed exhibits to his response to the motion.  Dkt. No. 57-1.  Defendants do not object or challenge the authenticity of the documents.

At the time of the incidents described in the Complaint, Wells was an inmate in the

custody of DOCCS.  *See generally*, Compl.  From December 8, 2016 through July 25, 2017,

Wells was incarcerated at Five Points Correctional Facility ("Five Points C.F.").  Dkt. No. 54-7

at ¶ 11.

On April 12, 2017, Wells was admitted to SUNY Upstate University Hospital for medical

attention after he swallowed numerous objects including a pen, headphone jacks, a rubber

glove, a paper clip, sewing needles, batteries, a toothpaste tube, and eyeglass parts.  Dkt.

No. 54-5 at 20-21[3]; Dkt. No. 54-6 at ¶ 4.

On April 13, 2017, Wells told Sergeant Edwards that he did not want to undergo surgery

and asked to return to the facility.  Dkt. No. 54-5 at 21; Dkt. No. 57 at 3.  Edwards left Wells'

hospital room and returned, less than ten minutes later, with Correctional Officer Turo,

Correctional Officer Vosberg, Sergeant Locastro, SUNY Security Guard Jane Doe, and

SUNY Security Guard John Doe.  Dkt. No. 54-5 at 25-26.  Defendants directed Wells to

remain in his bed so that a nurse could administer a shot of Haldol.  *Id*. at 28.  When Wells

attempted to "reject" the shot, Defendants physically restrained him.  *Id*. at 30.  Vosberg

applied a choke hold and John Doe repeatedly punched Wells in the groin area.  *Id*. 31-43.

Edwards and Locastro "held" Wells down while the nurse administered a second shot of

---

Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will
consider the facts and relevant exhibits/documents in the context of the within motion.  *See U.S. v. Painting
known as Hannibal*, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y.  May 18, 2010) (citing *Daniel v.
Unum Provident Corp*., 261 F. App'x 316, 319 (2d Cir.  2008) ("[A] party is not required to authenticate
documents on a summary judgment motion where, as here, authenticity is not challenged by the other party)).  In
light of the procedural posture of the case, the following recitation is derived from the record now before the
Court, with all inferences drawn and ambiguities resolved in non-moving party's favor.  *Terry v. Ashcroft*, 336
F.3d 128, 137 (2d Cir. 2003).

[3]        Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers
generated by the parties.

Haldol. Dkt. No. 54-5 at 47. Turo "grabbed his scrotum and applied a lot of pressure" and Vosberg attempted to "dig into the side of [his] eye" and covered his face with a pillow causing Wells to lose consciousness.[4]  *Id*. at 40-43, 45, 47.

On April 14, 2017, Wells underwent an exploratory laparotomy for removal of the foreign objects.[5] Dkt. No. 54-14 at ¶ 6. Hanlon, a surgical resident at Upstate Hospital, assisted the primary surgeon during the surgery. Dkt. No. 54-14 at ¶ 5, 6. Wells remained at the hospital until April 24, 2017, when he returned to Five Points C.F. Dkt. No. 54-5 at 59; Dkt. No. 54-6 at ¶ 6.

On April 27, 2017, Plaintiff mailed the Complaint in this action to the Court.[6] Dkt. No. 54-5 at 17; Dkt. No. 57 at 7. During his deposition, Wells testified that, on April 29, 2017, he submitted a grievance in the "grievance box" at Five Points C.F.[7] Dkt. No. 54-5 at 74, 76; Dkt. No. 57 at 5. In the grievance, Wells claimed that Locastro, Edwards, Turo, and Vosberg used excessive force to subdue him and to prevent him from refusing medical treatment. Dkt. No. 57-1 at 3-4. Wells also alleged that Hanlon "cut open my stomach, abdominal fascia and inner stomach" without Wells' consent. *Id*. at 4.

Approximately four days later, Wells spoke to Mandi Schultz ("Schultz"), the Supervisor of the Inmate Grievance Program ("IGP") at Five Points C.F. and asked her if she received

---

[4]     Edwards, Locastro, Turo, and Vosberg did not provide affidavits or declarations in support of the motion for summary judgment.

[5]     The issue of whether Wells' consented to the surgery is disputed by the parties.

[6]     While the last page of the Complaint indicates that Wells' signed the pleading on April 29, 2017, the envelope was postmarked April 27, 2017. Compl. at 4; Dkt. No. 1-3. During his deposition, Wells testified that he mailed the Complaint on April 27, 2017. Dkt. No. 54-5 at 17.

[7]     Defendants dispute this allegation and claim that the grievance was initially filed in June 2017. Dkt. No. 54-7 at ¶ 15-16; Dkt. No. 57-1 at 7.

his grievance related to the incidents that transpired at the hospital.[8]  Dkt. No. 54-5 at 74, 77. Wells claims that Schultz responded, "no" and told him that he could not file a grievance at Five Points C.F. concerning an incident that occurred at an outside hospital.[9]  *Id.* at 77.

On June 18, 2017, Plaintiff wrote to Schultz and asked for information related to his grievance.  Dkt. No. 29 at 7; Dkt. No. 54-5 at 78-79.  Wells advised that he had not received a response and enclosed a copy of the grievance.[10]  *Id.*

On June 28, 2017, Plaintiff stopped Schultz as she conducted her weekly rounds and asked about his grievance.  Dkt. No. 54-1 at ¶ 13; Dkt. No. 54-7 at ¶ 16; Dkt. No. 57 at 7. Wells provided Schultz with a copy of his grievance.  Dkt. No. 54-7 at ¶ 16; Dkt. No. 57-1 at 3-4.

On June 28, 2017, Schultz responded to Wells' inquiries, in writing, advising that the grievance "you gave me today" was not previously filed.  Dkt. No. 57-1 at 7.  On July 5, 2017, Plaintiff's grievance was filed and assigned a grievance number, FPT-33510-17.  *Id.* at 3-4.

On February 12, 2018, the Superintendent of Five Points C.F. issued a decision denying the grievance.  Dkt. No. 54-5 at 82; Dkt. No. 57-1 at 6.  Wells did not cooperate with the investigation into the grievance.  Dkt. No. 54-5 at 83.  Wells did not file an administrative appeal of the Superintendent's decision to the Central Office Review Committee ("CORC"), the body that renders final administrative decisions under DOCCS' three-step IGP.  Dkt. No. 54-11 at ¶ 13-14.

---

[8]     Schultz is not a defendant in this action.

[9]     Schultz does not deny speaking with Wells during that time frame however, she denies that she advised Wells that the issue was not grievable.  Dkt. No. 54-7 at ¶ 14.

[10]     Schultz does not confirm or deny receipt of this correspondence.  Dkt. No. 54-7.

## B. Procedural History

On May 1, 2017, the Court received the Complaint in the within action. Dkt. No. 1. Upon review of the Complaint, the Court directed Defendants to respond to the following: (1) Fourteenth Amendment claims related to forced medical treatment; (2) Eighth Amendment excessive force claims; and (3) state law assault and battery claims. Dkt. No. 5. On September 27, 2017, in lieu of an answer, Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") for failure to exhaust administrative remedies. Dkt. No. 25. In the alternative, Defendants moved to dismiss the claims against Hanlon for failure to plead personal involvement and to dismiss the assault and battery claims based upon New York Correction Law § 24. Dkt. No. 25. In a Report and Recommendation, United States Magistrate Judge David Peebles recommended that Defendants' motion to dismiss the assault and battery causes of action against Edwards, Locastro, Turo, and Vosberg be granted. Dkt. No. 34 at 27. Judge Peebles recommended that the motion be denied in all other respects. *Id*. In an Order filed on May 30, 2018, Senior United States District Court Judge Lawrence E. Kahn approved and adopted the Report and Recommendation, in its entirety. Dkt. No. 38.

On July 27, 2018, Defendants filed an Answer to the Complaint.[11] Dkt. No. 42. On January 9, 2019, Wells appeared at a deposition. Dkt. No. 54-5. On April 22, 2019, Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a matter of law with respect to Wells' claims. Dkt. No. 54. Wells opposed the motion. Dkt. No.

---

[11]     In the Answer, Defendants pleaded, *inter alia*, the affirmative defense that Wells failed to exhaust his administrative remedies. Dkt. No. 42 at ¶ 16.

57.

## II. LEGAL STANDARD

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 248 (1986).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.  Fed. R. Civ. P. 56©; *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  *Scott*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997). Furthermore, where, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law.

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191–92 (2d Cir. 2008). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION[12]

Defendants move for summary judgment arguing that Wells failed to exhaust his administrative remedies. *See generally*, Dkt. No. 54. In the alternative, Defendants claim that: (1) Hanlon is entitled to qualified immunity; and (2) there are no disputed issues of material fact precluding summary judgment on the state law assault claim against Hanlon.

### A. Exhaustion

---

[12]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to Plaintiff.

Defendants contend that Wells failed to exhaust his administrative remedies through available grievance procedures. Dkt. No. 54-2 at 7-10. In response, Wells claims that administrative remedies were unavailable to him. Dkt. No. 57 at 2.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo*, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. *Id*. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation omitted).

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program ("IGP"). N.Y. Comp. Codes R. & Regs. title 7, § 701.5 (2015). First, the inmate must file a complaint with IGP clerk within twenty-one days of the alleged action. *Id*. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. *Id*. at § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. *Id*. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal

9

the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination.  *Id*. § 701.5(c)(1).  If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination.  *Id*. §§ 701.5(d)(1)(i)-(ii).  If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC.  *Id*. at § 701.5(d)(3)(i).  CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received."  *Id*. § 701.5(d)(3)(ii).  Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court.  *Bridgeforth v. Bartlett*, 686 F.Supp.2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia, Porter*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter,* 534 U.S. 516.

Where the grievance involves allegations of employee excessive force, as alleged by Wells, there is an expedited administrative process.  *See* N.Y.C.R.R. title 7, § 701.8; *see Torres v. Carry*, 691 F.Supp.2d 366, 369–70 (S.D.N.Y. 2009).  Complaints and grievances of this nature are forwarded directly to the superintendent of the facility.  *Bell v. Napoli*, No. 9:17-CV-850 (ATB), 2018 WL 6506072, at *2 (N.D.N.Y. Dec. 11, 2018).  In such cases the superintendent is required to order an investigation and render a decision within twenty-five (25) days.  *See* N.Y.C.R.R., title 7, § 701(a)-(f).  If the superintendent fails to respond within the required twenty-five (25) day time limit the inmate may appeal his grievance to the

CORC.  Disagreement with the superintendent's decision in the expedited review process also requires an appeal to the CORC.  *Id.* § 701.8-(g)-(h); *see also Espinal v. Goord,* 588 F.3d 119,125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC).  The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA.  *See Hall v. County of Saratoga*, No. 10–CV–1120 (NAM/CFH), 2013 WL 838284, at *1–2 (N.D.N.Y. Mar. 6, 2013).

### 1.  Did Plaintiff Exhaust his Administrative Remedies?

At the time of the incidents that give rise to this action, Five Points C.F. had a grievance program.  Dkt. No. 54-7.  Wells was very familiar with the IGP, having filed forty to fifty grievances in various facilities over approximately sixteen years.  Dkt. No. 54-5 at 83-84. Defendants do not dispute that Wells filed a grievance pertaining to his claims in the underlying action, but argue that he filed this lawsuit prior to filing his grievance and thus, failed to exhaust his administrative remedies.  Dkt. No. 54-1; Dkt. No. 54-2 at 9.  Defendants claim that Wells' submitted his grievance, for the first time, in June 2017.  Dkt. No. 54-2 at 9. Conversely, Wells testified that he filed his grievance on April 29, 2017.  Dkt. No. 54-5 at 74-76.

While the parties disagree on the date that the grievance was initially filed, the record is clear that Wells mailed the Complaint in this action on April 27, 2017.  Dkt. No. 54-5 at 17. Even assuming Wells' version of events to be true, Wells submitted a grievance related to the incidents that are the subject of this lawsuit <u>after</u> the lawsuit was filed with the Court. Thus, there is no dispute that Wells failed to exhaust his administrative remedies prior to

filing this lawsuit.  *See Anderson v. Spizziota,* No. 11-5663, 2016 WL 11480707, at *22

(E.D.N.Y. Feb. 12, 2016), *report and recommendation adopted sub nom.,* 2016 WL 1275044

(E.D.N.Y. Mar. 31, 2016) (holding that the plaintiff failed to exhaust his remedies prior to

commencing suit where the grievance was submitted to the grievance office after the plaintiff

had filed complaint)*; see also Castineiras v. Helms*, No. 9:17-CV-1084 (BKS/ATB), 2019 WL

2870300, at *4 (N.D.N.Y. June 6, 2019), *report and recommendation adopted*, 2019 WL

2869332 (N.D.N.Y. July 3, 2019) ("If plaintiff signed his administrative grievance and his

federal complaint on the same day and mailed the federal complaint to the court, it is

impossible that plaintiff could have exhausted his administrative remedies before he filed his

federal action."); *Wegman v. Grimmke*, No. 03-CV-234S, 2004 WL 2202642, at *4 (W.D.N.Y.

Sept. 30, 2004) ("The fact that Plaintiff proceeded to file a grievance with the Inmate

Grievance Program after he filed his Complaint in federal court belies any suggestion that the

Program was not available.").[13]

## 2. Availability of Administrative Remedies

Wells contends that he should be excused from the exhaustion requirement because

administrative remedies were unavailable to him.  Dkt. No. 57 at 2.

### a.  Exhaustion as to Locastro, Edwards, Turo, and Vosberg

Wells argues that the IGP was unavailable to him with respect to his Eighth and

Fourteenth Amendment claims against Locastro, Edwards, Turo, and Vosberg because

---

[13]    In the Report-Recommendation, Judge Peebles noted, "[a]lthough it is clear that, prior to commencing suit in this action, plaintiff did not exhaust available remedies with regard to his civil rights claims[.]" Dkt. No. 34 at 26.

Schultz told Wells that he could not grieve an incident that occurred at an outside hospital. [14]
Dkt. No. 54-5 at 77.  In support of the motion, Defendants submitted Declaration from
Schultz.  Dkt. No. 54-7.  Schultz declared that she did not relay that information to Wells.  *Id*.
at ¶ 14.  Indeed, Schultz affirms that a grievance involving DOCCS' staff can be filed at any
facility where an inmate is housed.  *Id*.

While the record contains contradictory statements that demonstrate "squarely conflicting
accounts" that would "give rise to a dispute of fact that cannot appropriately be decided on
summary judgment," *see Peak v. Schwebler*, 11–CV–0041 (MAD/DEP), 2013 WL 317016, at
*5 (N.D.N.Y. Jan. 3, 2013), the Court cannot end the inquiry there.

Even accepting Wells' assertions as true, the evidence does not support the conclusion
that Schultz's statements rendered the grievance process "unavailable" because Wells' filed
his grievance four days <u>before</u> his conversation with Schultz.  Dkt. No. 58 at 2.  Moreover,
Schultz's statement did not deter Wells from further utilizing the grievance process because,
after the conversation occurred, Wells resubmitted his grievance on two separate occasions;
once with his June 18, 2017 letter to Schultz and again when he personally spoke with
Schultz on June 28, 2017.  Wells does not argue, and the record does not support, the
conclusion that Schwartz or any other DOCCS' employee restricted, thwarted, or interfered
with Plaintiff's access to the IGP.

To the extent that Wells argues that the length of time between when he filed the
grievance and the superintendent's response should excuse the exhaustion requirement, that

---

[14]    In the Complaint, Wells stated, "Plaintiff has not filed a grievance as the incident occurred in
SUNY Upstate Medical Center and to the Plaintiff's best of knowledge the hospital has no grievance process."
Dkt. No. 1 at ¶ 14.

argument lacks merit.  Because Wells filed this action <u>before</u> he filed the grievance, "he would not have known how long it would take the [Superintendent] to decide his claims or even whether he would have to appeal[.]"  *Keitt v. Hawk*, No. 9:13-CV-850 (GLS/ATB), 2015 WL 1246058, at \*16 (N.D.N.Y. Mar. 18, 2015) (dismissing the complaint for failure to exhaust administrative remedies prior to filing this action).

Even affording Wells the special solicitude required as a pro se litigant, Wells has failed to demonstrate that he should be excused from the exhaustion requirement as it relates to his claims against Locastro, Edwards, Turo, and Vosberg.

Accordingly, as exhaustion is a prerequisite to filing an action in federal court, it is recommended that Defendants' motion for summary judgment insofar as it seeks dismissal of the claims against Locastro, Edwards, Turo, and Vosberg, for failure to exhaust, be granted.

### b. Exhaustion as to Hanlon

A different conclusion is reached however, with respect to Wells' claims against Hanlon. It is undisputed that, at the time of the alleged incident, Hanlon was not a DOCCS' employee. Dkt. No. 55.  As discussed in Magistrate Judge Peebles' Report and Recommendation, the IGP contains a provision precluding inmate grievances related to outside agencies.  Dkt. No. 34 at 16.  To wit, section 701.3(f) provides:

> Outside agencies excluded.  Any policy, regulation or rule of an outside agency (e.g., the division of parole, immigration and customs enforcement, the office of mental health, etc.) or action taken by an entity not under the supervision of the commissioner is not within the jurisdiction of the IGP.

*See* 7 N.Y.C.R.R. § 701.3.

In the Report and Recommendation, Magistrate Judge Peebles discussed § 701.3(f)

14

and noted that, "[d]efendants do not address this provision in their motion." Dkt. No. 34 at 16.

The Court held:

> Because the IGP specifically excludes from its provisions those complaints aimed at non-DOCCS entities and persons, it cannot be said that the IGP was available to plaintiff with respect to his complaints against defendant Hanlon. On that basis alone, I would recommend denying defendants' motion to the extent it seeks dismissal of plaintiff's claims against defendant Hanlon based on plaintiff's failure to exhaust.

Dkt. No. 34 at 16.

In the present motion, Defendants do not address § 701.3(f) and failed to proffer any evidence in support of the conclusion that Wells' requested relief against Hanlon was available within the PLRA.  For that reason alone, summary judgment should be denied. *See White v. Uhler*, No. 9:14-CV-1400 (LEK/ATB), 2017 WL 9511097, at *10 (N.D.N.Y. May 4, 2017), *report and recommendation adopted*, 2017 WL 3278907 (N.D.N.Y. Aug. 2, 2017), *appeal dismissed sub nom. White v. Bell*, No. 17-2611, 2017 WL 5634296 (2d Cir. 2017) (denying summary judgment on the issue of exhaustion where the defense counsel did not address § 701.3 in their reply resulting in questions of fact).

While defense counsel does not specifically address this issue, DOCCS IGP Assistant Director Rachel Seguin ("Seguin") declared that Wells' complaints related to "assault[s] by DOCCS staff, among others, during his stay at SUNY Upstate University Medical Center in April 2017," are proper subjects under DOCCS IGP.  Dkt. No. 54-11  at ¶¶ 9, 10.  Seguin does not however, reference § 701.3(f) or Hanlon, specifically.  Seguin's self-serving, conclusory assertions are insufficient to raise an issue of fact requiring a trial on this issue. *See Borges v. Adm'r For Strong Mem'l Hosp*, No. 99-CV-6351FE, 2002 WL 31194558, at *3 (W.D.N.Y. Sept. 30, 2002) (finding no evidence to suggest that the claims against a dentist

15

and his assistant "could have been handled internally within the DOCS grievance procedure").

Because "an action taken by an entity not under the supervision of the Commissioner of Corrections and Community Supervision is not within the jurisdiction of the inmate grievance program," *Vega v. Fischer*, 91 A.D.3d 1245, 1245–46 (2012), it is recommended that Defendants' motion for summary judgment dismissing the Complaint against Hanlon for failure to exhaust be denied.[15]

### B. Qualified Immunity

In the alternative, Defendants argue that Hanlon is entitled to qualified immunity as to Wells' Fourteenth Amendment claims and state law assault and battery claims.[16]  Dkt. No. 54-2 at 11-12.  Qualified immunity generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229-30 (N.D.N.Y. 2002) (J. McAvoy), *aff'd* 80 Fed. App'x 146 (2d Cir. 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  *Kaminsky v.*

---

[15]    In the alternative, Defendants request an evidentiary hearing to determine the issue of exhaustion.  Dkt. No. 54-2 at 4.  For the reasons set forth herein, a hearing is unnecessary and thus, the request is denied.

[16]    While qualified immunity applies to federal causes of action, "New York common law 'grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without reasonable basis.' " *Mangino v. Inc. Vill. of Patchogue*, 814 F.Supp.2d 242, 250 (E.D.N.Y. 2011) (citing *inter alia Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) ).

*Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991); *Magnotti v. Kuntz*, 918 F.2d 364, 367(2d Cir. 1990) (internal citation omitted)). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether constitutional rights were clearly established at the time of the alleged violation. *Aiken*, 236 F.Supp.2d at 230.

Here, the parties do not dispute that Hanlon was acting "under color of state law." Further, it is well-settled that on April 14, 2017, the Fourteenth Amendment protected the right of a competent person to refuse unwanted medical treatment. *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). Because issues of fact exist concerning whether Wells consented to the surgery, qualified immunity does not protect Hanlon. In support of the motion, Hanlon provided a Declaration and avers that Wells gave "informed consent" after Hanlon explained the risks and benefits of the procedure and that Wells' signature appears on the consent forms. Dkt. No. 55 at ¶¶ 8, 9. Conversely, Wells testified that, prior to the surgery, he told Hanlon that he did not want surgery. Dkt. No. 54-5 at 51, 53, 54-56, 58. During his deposition, Wells also testified that he did not execute the Upstate University Hospital "Patient Anesthesia Care Consent" or the "Consent for Diagnostic, Invasive or Surgical Procedures". *Id*. at 87-91; Dkt. No. 55-3 at 2-3; Dkt. No. 55-4 at 2-3. The credibility of the parties' statements are for the jury to consider. The Second Circuit has held, "the self-serving nature of a witness' statements goes to the statements' weight, not to their admissibility," and "the weighing of such statements is a matter for the finder of fact at trial, 'not the prerogative of the court on a motion for summary judgment.' " *B2X Corp. v. Classic*

17

*Closeouts*, No. 08 Civ. 4552, 2010 WL 2230198, at *3, n. 4 (S.D.N.Y. 2010) (citing *In re Dana Corp.*, 574 F.3d 129, 153 (2d Cir. 2009) ). While Hanlon may be able to convince a trier of fact that the consent forms are authentic, the Court's role in resolving a summary judgment motion is not to make those factual findings. *See id.*

Thus, because a reasonable jury could conceivably accept Wells' claim that Hanlon performed surgery against Wells' consent, Hanlon is not entitled to qualified immunity for the alleged Fourteenth Amendment violation and state law assault and battery claims. *See Brown v. Ionescu*, No. 02 CIV. 1218LMM, 2004 WL 2101962, at *6 (S.D.N.Y. Sept. 21, 2004) ("It cannot be 'objectively reasonable' for a doctor to believe that his acts in performing a procedure despite a patient's explicit refusal did not violate the patient's rights."). Accordingly, it is recommended that Defendants' motion for summary judgment be denied on this ground.

### C. State Law Assault Claim[17]

Defendants also move to dismiss Wells' civil assault claim against Hanlon. Dkt. No. 54-2 at 12-13. Defendants argue that the evidence on record does not establish that Hanlon engaged in any "physical conduct that placed [Wells] in imminent apprehension of an unwanted surgery." *Id.* at 13.

"To establish an assault claim under New York law, [a] plaintiff must show that [the] defendant placed the plaintiff in reasonable fear of imminent harmful or offensive bodily contact." *5 Borough Pawn, LLC. v. Marti*, 753 F.Supp.2d 186, 200–01 (S.D.N.Y. 2010). "Certainly, assault is a viable theory of recovery in circumstances where a medical procedure

---

[17]     Defendants do not move for summary judgment on Wells' state law battery claim.

is performed, against a competent patient's expressed wishes, in a non-exigent situation."
*Oates v. New York Hosp.*, 131 A.D.2d 368, 369, 517 N.Y.S.2d 6, 7 (1987).

As discussed *supra,* there is an issue of fact as to whether Wells consented to the surgical procedure.  In light of the Court's recommendation that Plaintiff's Fourteenth Amendment claim against Hanlon survives summary judgment, summary judgment should be denied as to the assault claim.

### III.  DOE DEFENDANTS

As discussed *supra*, Wells asserted Eighth and Fourteenth Amendment claims against Jane Doe and John Doe.  In an Order issued on March 29, 2019 (the "March Order"), the Court directed Plaintiff to file an affidavit on or before April 17, 2019 showing cause why this action should not be dismissed as to defendants Jane Doe, University Security Guard Sergeant, SUNY Upstate Medical Center and John Doe, University Security Guard Sergeant, SUNY Upstate Medical Center for failure to prosecute, based upon Plaintiff's failure to "take reasonable steps through discovery in this action to learn the full name of the Jane and John Doe defendants so that they may be properly identified and served with process[.]"   Wells was advised that if he failed to file an affidavit on or before April 17, 2019, it would be recommended that this action be dismissed as to the Jane and John Doe defendants, with prejudice.

Wells did not comply with the March Order and, further, in his opposition to Defendants' motion is devoid of any reference to the Doe Defendants.  Therefore, as to the still unidentified John Doe and Jane Doe Defendants, I recommend these Defendants be dismissed based upon: (1)  Fed. R. Civ. P. 16(f) for failure to comply with a court order

19

pursuant to; (2) Fed. R. Civ. P. 41(b) and N.D.N.Y.L.R. 41.2(a) for failure to prosecute under; and (3) Fed. R. Civ. P. 4(m) for failure to serve within 90 days.

## IV. CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 54) be **GRANTED** as to Defendants' exhaustion defense as it relates to claims against Locastro, Edwards, Turo, and Vosberg; and it is further

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 54) be **DENIED** as to (1) Defendants' exhaustion defense as it relates to claims against Hanlon; (2) Hanlon's qualified immunity defense; and (3) the state law assault claim; and it is further

**RECOMMENDED** that Plaintiff's claims against Jane Doe and John Doe be **DISMISSED** *sua sponte*; and it is further

**RECOMMENDED** that Defendants' request for an evidentiary hearing on the issue of exhaustion be **DENIED**; and it is

**ORDERED** that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[18] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**

---

[18]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(c).

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.


DATED: September 20, 2019

       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge